UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK HITSMAN,

        Plaintiff,

v.

LIBERTY SOLUTIONS & ASSOCIATES, LLC,
LSA PROCESSING SYSTEM, LLC,
NATIONAL LANDMARK LOGISTICS, LLC,
FREEDOM MANAGEMENT AND CONSULTING, LLC,
UBS SYSTEMS LLC,
UNIVERSAL PROCESSING SOLUTIONS OF
CHECK RECOVERY, LLC,
C&C CONTRACTORS, LLC,
PROVEN MANAGEMENT LOGISTICS LLC,
JEAN PIERRE CELLENT,
FRANK E. MCBRIDE,
JOHN FRANCIS JOSEPH III,
ERIC DAVID DENNISON, and
JAMES CLE DENNISON,

        Defendants.

_____/

<u>COMPLAINT</u>

## I.    Introduction

1.    Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit account and debt. Defendants are debt collectors and credit identity thieves who acquired plaintiff's stolen personal and financial information along with the counterfeit account, and then contacted and falsely threatened plaintiff with litigation, prosecution and other adverse consequences unless plaintiff paid defendants money to satisfy the non-existent debt.

1

2.      Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.*, Michigan Regulation of Collection Practices Act ("MRCPA"), M.C.L. § 445.251 *et seq.,* and Michigan Occupational Code ("MOC") M.C.L. § 339.901 *et seq.*

3.      Defendants, along with other entities and individuals to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired and uses false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay alleged loans. This scheme, and similar ones operated by seemingly countless entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina, are based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that falsely threatens the consumer with prosecution, litigation, and other adverse consequences, unless the consumer immediately makes a payment to the caller. Often times the perpetrators falsely inflate the amount of the alleged debt. Often times the consumer is falsely accused of having committed a crime. Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information has been stolen, sold and resold to multiple parties, such that the caller does not own or otherwise have any right to collect any debt from the consumer. Often times, the loan has been repaid or otherwise previously resolved and there is no debt owed. Often times, the account and related, alleged debt are counterfeit. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

4.      These unlawful debt collection schemes remain epidemic. On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S. District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

6.      The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful

activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

7.      Defendants have knowingly and unlawfully acquired, transferred, shared among themselves and used, plaintiff's stolen personal and financial information, in furtherance of their joint enterprise to contact and coerce the payment of money from plaintiff through false threats of prosecution and litigation, claiming money due on a fake debt, in violation of the FDCPA, DPPA and Michigan law.

## II.      Jurisdiction

8.      The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. The Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

## III.      Parties

9.      Plaintiff Jack Hitsman is an adult, natural person residing in Montcalm County, Michigan. Mr. Hitsman is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Hitsman is a "person" as the term is defined and used in the DPPA. Mr. Hitsman is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

10.      Defendant Liberty Solutions & Associates, LLC ("LSA"), also doing business as Liberty Solution Associates, also doing business as "LSA",  is an active South Carolina limited liability company, formed on or about April 8, 2015, and purportedly doing business at 1646 Highway 60, "Suite 8149," Fort Mill, South Carolina 29708. However, that address is merely a

private mailbox rented by defendants from PostNet Store No. 110. The registered agent for LSA is defendant Eric David Dennison, 1646 Highway 60, "Suite 8149," Fort Mill, South Carolina 29708. LSA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. LSA regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. LSA is a "debt collector" as the term is defined and used in the FDCPA. LSA is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, LSA is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

11.     According to the Better Business Bureau, LSA also does business as "UBS Systems, LLC," and the LSA contact telephone numbers are 855-862-4552, 866-285-1488, and 888-640-1843 (fax), which is the same fax number used by defendants when they communicated with Mr. Hitsman using the unregistered name "P&R Legal Processing."

12.     LSA through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

13.     Defendant LSA Processing System, LLC ("LSAPS") is an active South Carolina limited liability company, formed on or about July 3, 2018, and purportedly doing business at 1974 Carolina Place Drive, Fort Mill, South Carolina 29708. The organizer and registered agent for LSAPS is defendant James Cle Dennison, 1974 Carolina Place Drive, Suite 200, Fort Mill, South Carolina 29708. LSAPS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. LSAPS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. LSAPS is a "debt collector" as the term is defined and used in the FDCPA. LSAPS is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, LSAPS is a "collection agency" and

5

"licensee" as the terms are defined and used in the MOC.

14.     LSAPS through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

15.     Defendant National Landmark Logistics, LLC ("NLL") is an active South Carolina limited liability company, formed on or about May 23, 2016, and purportedly doing business at 2203 Deerfield Drive, Fort Mill, South Carolina 29715-6941 (a commercial building owned by non-party Stajos Development LLC). The registered agent for NLL is defendant Jean Pierre Cellent, 1015 Charlotte Avenue, Suite 123, Rock Hill, South Carolina 29732, which is merely a private mailbox rented by defendants from The UPS Store No. 4411. NLL uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. NLL regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. NLL is a "debt collector" as the term is defined and used in the FDCPA. NLL is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, NLL is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

16.     NLL became registered on September 23, 2016 to transact business in the State of Ohio using the name UBS Trstar Systems, LLC. The filed registration documents provide a business address of 1015 Charlotte Avenue, Suite 123, Rock Hill, South Carolina 29732 and state that defendants Jean Pierre Cellent is the owner of NLL and Frank E. McBride is a Managing Member of NLL. The NLL registered agent in Ohio is defendant Jean Pierre Cellent, 6956 East Broad Street, "Suite 178," Columbus, Ohio 43213. However, that address is merely a private mailbox rented by defendants from The UPS Store No. 2649.

17.     The South Carolina Workers Compensation Commission website states that NLL

(WC Carrier Code: 00315) currently maintains workers' compensation insurance for defendants'

employees through West American Insurance Company, Policy No. XWW2057723696, effective

date December 16, 2019, with two reported employer locations: 2203 Deerfield Drive, Fort Mill,

South Carolina 29715-6941 (a commercial building owned by non-party Stajos Development

LLC); and 1015 Charlotte Avenue, Suite 123, Rock Hill, South Carolina 29732 (which is merely

a private mailbox rented by defendants from The UPS Store No. 4411).

18.     The South Carolina Workers Compensation Commission website also states that

"National Landmark Logistics," a presumed fictitious name used by defendants (WC Carrier

Code: 00428) currently maintains workers' compensation insurance for defendants' employees

through Hartford Insurance Company of the Midwest, Policy No. 76WEGAF2RZY, effective

date January 30, 2020, with one reported employer location: 1015 Charlotte Avenue, Suite 123,

Rock Hill, South Carolina 29732 (which is merely a private mailbox rented by defendants from

The UPS Store No. 4411).

19.     On April 14, 2020, National Landmark Logistics LLC, located in Rock Hill,

South Carolina, was approved by the Small Business Administration for a PPP Loan in the

amount of $150,000.00-$350,000.00 from TD Bank, N.A. The PPP Loan application filed by

NLL stated that NLL would be using the funds to "retain jobs" for "twenty-nine employees," and

falsely stated that NLL is in the industry category "General Freight Trucking, Local," when in

fact, most (if not all) of the twenty-nine employees work in defendants' debt collection call

center.

20.     NLL through its employees and agents directly and indirectly participated in the

efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

21.     Defendant Freedom Management and Consulting, LLC ("FMC") is an active Ohio

limited liability company, formed on or about October 11, 2016. The managing member and registered agent for FMC is defendant Frank E. McBride, 6956 East Broad Street, "Suite 178," Columbus, Ohio 43213, which is the same private mailbox rented by defendants and used as the Ohio address for defendant NLL, doing business in Ohio as UBS Trstar Systems, LLC. FMC uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. FMC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. FMC is a "debt collector" as the term is defined and used in the FDCPA. FMC is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, FMC is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

22.     FMC through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

23.     Defendant UBS Systems LLC ("UBS") is an active New York limited liability company, formed on or about December 18, 2017, with a registered address of 1451 52nd Street, Brooklyn, New York 11219. UBS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. UBS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. UBS is a "debt collector" as the term is defined and used in the FDCPA. UBS is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, UBS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

24.     UBS through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

25. Defendant Universal Processing Solutions of Check Recovery, LLC ("UPSCR") is an active South Carolina limited liability company, formed on or about September 14, 2012. UPSCR purportedly has operated at 7500 East Independence Boulevard, Suite 1, Charlotte, North Carolina 28227. The registered agent for UPSCR is defendant John Francis Joseph III, 1735 Heckle Boulevard, "Suite 111-259," Rock Hill, South Carolina 29732, which is merely a private mailbox rented by defendants from The UPS Store No. 4413. UPSCR uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. UPSCR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. UPSCR is a "debt collector" as the term is defined and used in the FDCPA. UPSCR is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, UPSCR is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

26. UPSCR through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

27. Defendant C&C Contractors, LLC ("C&C") is an active South Carolina limited liability company, formed on or about February 2, 2017. The registered agent for C&C is defendant Jean Pierre Cellent, 1646 West Highway 160, "Suite 8126," Fort Mill, South Carolina 29708. However, that address is merely a private mailbox rented by defendants from PostNet Store No. 110. C&C uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. C&C regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. C&C is a "debt collector" as the term is defined and used in the FDCPA. C&C is a "regulated person" as the term is defined

9

and used in the MRCPA. Alternatively, C&C is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

28.     C&C became registered on February 2, 2017 to transact business in the State of Ohio using the name Wonderful Credit, LLC. The filed registration documents provide a business address of 1646 West Highway 160, "Suite 8126," Fort Mill, South Carolina 29708. The C&C registered agent in Ohio is defendant Jean Pierre Cellent, 6956 East Broad Street, "Suite 178," Columbus, Ohio 43213. However, that address is merely a private mailbox rented by defendants from The UPS Store No. 2649 and shared with defendant National Landmark Logistics, LLC.

29.     C&C through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

30.     Defendant Proven Management Logistics LLC ("PML") is a Florida limited liability company, incorporated April 22, 2020. The mailing address for PML is 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702. Defendant Jean Pierre Cellent, 2203 Deerfield Drive, Fort Mill, South Carolina 29715, is a Managing Member of PML. The registered agent of PML is Thomas Kevin Glover, 7901 4th Street North, Suite 300, St. Petersburg, Florida 33702. C&C uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PML regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PML is a "debt collector" as the term is defined and used in the FDCPA. PML is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, PML is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

31.     Non-party Thomas Kevin Glover runs a one-man/one truck motor carrier operation (USDOT No. 1669564) using the name All The Rite Moves, Inc.

32.     In July 2020, defendants ran multiple advertisements on the internet, seeking to hire ten new full-time employees to work as telephone debt collectors at a Proven Management Logistics LLC call center, supposedly located in Miami, Florida 33186.

33.     PML through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

34.     LSA, LSAPS, NLL, FMC, UBS, UPSCR, C&C and PML are sometimes collectively referred to as the "Corporate Defendants" in this complaint.

35.     Defendant Jean Pierre Cellent is a natural person, purportedly residing at 556 Becker Avenue, Fort Mill, South Carolina 29715-8395. Mr. Cellent is a self-styled evangelist. Mr. Cellent has an extensive criminal history, including an arrest for assault with a deadly weapon. Mr. Cellent is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Mr. Cellent uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cellent regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cellent is a "debt collector" as the term is defined and used in the FDCPA. Mr. Cellent is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Cellent is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

36.     Mr. Cellent (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of

11

the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

37.     Mr. Cellent directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

38.     Defendant Frank E. McBride, also known as Frank Eugene McBride III, also known as Elder Frank McBride, is a natural person, likely residing at 3100 Markland Drive, Charlotte, North Carolina 28208. Mr. McBride receives mail at P.O. Box 38003, Charlotte, North Carolina 28278 and P.O. Box 242433, Charlotte, North Carolina 28224-2433. Mr. McBride is a self-styled evangelist. Mr. McBride is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Mr. McBride uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. McBride regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. McBride is a "debt collector" as the term is defined and used in the FDCPA. Mr. McBride is a "regulated person" as the term is defined and used in the MRCPA.

Alternatively, Mr. McBride is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

39.     Mr. McBride (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

40.     Mr. McBride directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

41.     Defendant John Francis Joseph III, also known as Jack Joseph, is a natural person, likely residing at 12304 (or possibly 12401) Headquarters Farm Road, Charlotte, North Carolina 28262. Mr. Joseph is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Mr. Joseph uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Joseph regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Joseph is a "debt collector" as the term is defined and used in the FDCPA. Mr. Joseph is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Joseph is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

42.     Mr. Joseph (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

43.     Mr. Joseph directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

44.     Defendant Eric David Dennison is a natural person, residing at 1256 Barringer Road, Rock Hill, South Carolina 29730. Mr. Dennison is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Mr. Dennison is the registered agent for

defendant Liberty Solutions & Associates, LLC, 1646 Highway 60, "Suite 8149," Fort Mill, South Carolina 29708. Mr. Dennison uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Dennison regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Dennison is a "debt collector" as the term is defined and used in the FDCPA. Mr. Dennison is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Dennison is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

45.     Eric David Dennison (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

46.     Eric David Dennison directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

47.     Defendant James Cle Dennison is a natural person, purportedly residing at 549 Lucky Way, Dallas, North Carolina 28034-8689. Mr. Dennison also has resided at 1256 Barringer Road, Rock Hill, South Carolina 29730. Mr. Dennison sometimes uses telephone number 336-287-8882 in connection with the operation of defendants' credit identity theft and debt collection scam. Mr. Dennison is an owner, officer, member, manager, employee and agent of the Corporate Defendants. Mr. Dennison is the registered agent for defendant LSA Processing System, LLC, 1974 Carolina Place Drive, Suite 200, Fort Mill, South Carolina 29708. Mr. Dennison uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Dennison regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Dennison is a "debt collector" as the term is defined and used in the FDCPA. Mr. Dennison is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Dennison is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

48.     On March 31, 2017, James Cle Dennison entered into an agreement with the PostNet Store No. 110, 1646 Highway 60, Fort Mill, South Carolina 29708, and rented a private mailbox, No. 8149. Mr. Dennison signed under oath, a United States Postal Form, PS 1583, stating that the private mailbox was being rented for use by "Liberty Solution Associates." Defendants have used the private mailbox to conceal their true identities and locations in connection with the operation of defendants' credit identity theft and debt collection scam.

49.     On October 25, 2019, a person named James Dennison, 2230 East Franklin Boulevard, Suite 100, PMB #297, Gastonia, North Carolina 28054, filed articles of organization for non-party Star Courier Plus LLC. It will need to be determined in discovery whether Star

Courier Plus LLC participated in any way with the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

50.     James Cle Dennison (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Hitsman as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants  and their employees and agents, in attempts to collect an alleged debt from Mr. Hitsman as stated in this complaint.

51.     James Cle Dennison directly and indirectly participated in the efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint.

52.     From at least 2015 to the present, the Corporate Defendants have operated their credit identity theft and debt collection scam from multiple office suites rented by defendants at 1974 Carolina Place Drive, Fort Mill, South Carolina 29708.

53.     Defendants sometimes borrow money to finance their credit identity theft and debt collection scam, and give their creditors a security interest in the counterfeit accounts, as

evidenced by UCC Statements filed with the State of South Carolina.

54.     On September 23, 2019, a UCC Statement (190923-1118180) was filed with the South Carolina Secretary of State, naming defendants National Landmark Logistics, LLC, 1015 Charlotte Avenue, "Suite 123," Rock Hill, South Carolina 29732 and Jean Pierre Cellent, 5556 Becker Avenue, Fort Mill, South Carolina 29715, as co-debtors, Bridge Funding Capital, LLC as secured party, and listing accounts receivables, contract rights, and general intangibles as collateral. Bridge Funding Capital, LLC financed defendants' unlawful debt collection scam, specifically, the purchase of portfolios of allegedly delinquent consumer accounts (some stolen, some counterfeit).

55.     On August 25, 2017, a UCC Statement (170825-1615078) was filed with the South Carolina Secretary of State, naming defendant National Landmark Logistics, LLC  as debtor, TD Bank, N.A. as secured party, and listing accounts receivables, chattel paper, and the proceeds thereof, as well as computers and equipment as collateral. TD Bank, N.A. financed defendants' unlawful debt collection scam, specifically, the purchase of portfolios of allegedly delinquent consumer accounts (some stolen, some counterfeit) as well as the equipment to be used to collect those accounts.

56.     On March 10, 2015, a UCC Statement (150310-1653285) was filed with the South Carolina Secretary of State, naming non-party National Landmark Services of United Recovery, LLC Logistics, LLC, 1974 Carolina Place Drive, Suite 200, Fort Mill, South Carolina 29708 and defendant Jean Pierre Cellent as co-debtors, Corporation Service Company as Representative of the secured party, and listing accounts receivables, contract rights, and general intangibles as collateral. The secured party financed defendants' unlawful debt collection scam,

specifically, the purchase of portfolios of allegedly delinquent consumer accounts (some stolen, some counterfeit).

57.     On January 15, 2015, a UCC Statement (150115-1240472) was filed with the South Carolina Secretary of State, naming non-party National Landmark Services of United Recovery, LLC Logistics, LLC, 1974 Carolina Place Drive, Suite 200, Fort Mill, South Carolina 29708 and defendant Jean Pierre Cellent as co-debtors, Reliable Fast Cash LLC as secured party, and listing accounts receivables, contract rights, and general intangibles as collateral. Reliable Fast Cash LLC financed defendants' unlawful debt collection scam, specifically, the purchase of portfolios of allegedly delinquent consumer accounts (some stolen, some counterfeit).

58.     NLL and Mr. Cellent sometimes receive mail at 1015 Charlotte Avenue, Suite 123, Rock Hill, South Carolina 29732-3016, which is a private mailbox rented by defendants from ANP, Inc., doing business as The UPS Store No. 4411. Mr. Cellent used this same private mail box in the past to conduct his unlawful debt collection scam through multiple and now defunct entities that he owned and controlled, including National Landmark Services of United Recovery, LLC, an Ohio limited liability company, and Capital Recovery Solutions, LLC, an Arizona limited liability company.

59.     Defendants own, control and use a Merchant Account established in the name of "LSA," located in South Carolina, to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application that was filed by defendants with the Acquiring Bank and Payment Processor or ISO to create the Merchant Account, as well as the related monthly account statements and other

account records, will need to be obtained from the Acquiring Bank and Payment Processor or ISO via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

60.     Defendants have maintained an internet domain, www.capitalinfo.co, which was registered anonymously on July 21, 2017 through domainsbyproxy/GoDaddy, LLC, and which defendants have used to send and receive email from various email addresses, including docs@capitalinfo.co@domainsbyproxy.com.

61.     Defendants also have maintained an internet domain, www.logisticsnow.info, which was registered anonymously on June 24, 2016 through domainsbyproxy/GoDaddy, LLC, and which defendants have used to send and receive email from various email addresses, including customerservice@logisticsnow.info@domainsbyproxy.com.

62.     Defendants also maintain an internet domain, www.libertysagroup.com, which was registered anonymously on December 8, 2016 through Perfect Privacy, LLC, and which defendants have used to send and receive email from various email addresses, including support@libertysagroup.com. The internet domain links to an internet website which states that LSA is in the business of collecting consumer debts and provides a contact telephone number of 855-862-4552.

63.     Defendants also maintain an internet domain, www.PaymentGroup.net which was registered by defendants Jean Pierre Cellent and Frank E. McBride on March 22, 2018 through GoDaddy.com, LLC and Domains By Proxy, LLC, and which defendants currently use to send and receive email from various email addresses, including customerservice@paymentgroup.net.

64.     Defendants and their employees and agents, in efforts to conceal their true identities and location, have conducted their unlawful debt collection scam using multiple, unregistered names, including: PNR; P&R; PNR Legal Services; P&R Legal Services; PNR Mediations; P&R Legal Processing; P&R Legal Processing & Recovery; P&R Processing & Recovery; Payment Group; TriStar Litigation; TriStar Processing; TriStar Legal Processing; TriStar Mediation; TriStar Mediation & Recovery; Central Processing & Recovery Associates; Capital; Emmitt Processing; Statewide Processing; Offices of Capital; Capital Litigation; NLS Processing; Process Center; UBS; UBS Systems; and UBS Processing.

65.     Defendants and their employees and agents conduct their unlawful debt collection scam using multiple telephone numbers, including: 800-255-7156; 844-611-6775; 855-201-9172; 855-202-8268; 855-203-1910; 855-203-6241; 855-203-7091; 855-203-7168; 855-203-7191; 855-203-8177; 855-203-8194; 855-205-7202; 855-206-2569; 855-206-9609; 855-209-3887; 855-210-1501; 855-210-2658; 855-213-6769; 855-217-0641; 855-217-2761; 855-217-2991; 855-218-0497; 855-218-2357' 855-230-8718; 855-281-9527; 855-282-8546; 855-283-2831; 855-335-1773; 855-335-3482; 855-335-3502; 855-410-6398; 855-849-3307; 855-854-3606; 855-862-4552; 865-379-7887; 866-285-1488; 866-317-9195; 877-283-9195; 877-318-8341; 877-421-3979; 877-421-8692; 888-640-1843 (fax); 888-718-0318; and 888-718-0321.

66.     Non-party United Movement International is an active North Carolina non-profit corporation, incorporated on or about April 21, 2016 by defendant Jean Pierre Cellent, with a registered principal office mailing address of P.O. Box 38003, Charlotte, North Carolina 28278, which is the same post office box that has been used for a period of years by defendants Jean Pierre Cellent and Frank E. McBride to conduct their credit identity theft and debt collection

scam that is described in this complaint. It will need to be determined in discovery whether

United Movement International participated in the efforts to collect an alleged debt from Mr.

Hitsman that are described in this complaint or is otherwise involved in the flow of money that is

obtained from defendants in connection with their credit identity theft and debt collection scam.

      67.     Non-party Cellent Global Logistics, LLC ("CGL") is a North Carolina limited

liability company, incorporated June 5, 2018 by defendant Jean Pierre Cellent, with a  business

address of 8116 South Tryon Street, "Suite 320," Charlotte, North Carolina 28273, which is

merely a private mailbox rented by Mr. Cellent from The UPS Store No. 3709. On December 19,

2018, CGL registered as a motor carrier (USDOT No. 3215925/MC-1005393) with the U.S.

Department of Transportation, but the current "Operating Status" of CGL is listed as "Inactive."

On August 16, 2018, Mr. Cellent registered the internet domain www.truckingcgl.com that links

to an active website. It will need to be determined in discovery whether CGL participated in the

efforts to collect an alleged debt from Mr. Hitsman that are described in this complaint or is

otherwise involved in the flow of money that is obtained from defendants in connection with

their credit identity theft and debt collection scam.

      68.     Plaintiff is proceeding against defendants collectively under a common enterprise

theory, under which "each entity within a set of interrelated companies may be held jointly and

severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club,*

*Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a

"maze of interrelated companies," exists, courts consider "the pattern and framework of the

whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no

one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain

officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

69.     All defendants, along with other companies, employees and agents to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

70.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

71.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.     Facts

72.     On or about January 31, 2006, plaintiff Jack Hitsman obtained a loan from CitiFinancial Auto ("CitiFinancial") to purchase a motor vehicle for personal, family and household purposes. CitiFinancial assigned the account the number 1022627729. Any resulting obligation to pay money was a "debt" as the term is defined and used in the FDCPA, MRCPA and MOC.

73.     In 2010, Mr. Hitsman became seriously ill, unable to work, and disabled. Mr. Hitsman fell behind on his monthly payments to CitiFinancial. Mr. Hitsman's account went into default. Mr. Hitsman has not made a payment on the account since 2010.

74.     On or about August 15, 2010, CitiFinancial repossessed the vehicle from Mr.

Hitsman.

75.     By letter dated September 6, 2010, CitiFinancial notified Mr. Hitsman that his delinquent account and related debt had been assigned to Santander Consumer USA Inc. ("Santander"). The letter also stated that Santander had assigned the account a new account number, 2615411, also sometimes known as account number 30000*1*2615411*1*000.

76.     In September 2010, Santander sold the vehicle at auction for approximately $8,600.00. Santander applied the proceeds to the account balance of approximately $13,000.00, leaving Mr. Hitsman owing Santander an alleged deficiency balance of $5,474.87.

77.     However, Santander failed to send Mr. Hitsman a timely and proper notice of intended sale of the vehicle prior to the sale of the motor vehicle as required by the Uniform Commercial Code as enacted in Michigan. MCL 440.9610; MCL 440.9611; MCL 440.9612; MCL 440.9613; and MCL 440.9614.

78.     Because Santander failed to comply with the notice requirements of MCL 440.9613 and MCL 440.9614, Santander became "absolutely barred" from collecting any deficiency balance related to the sale of the repossessed motor vehicle.  *State Bank of Standish v. Keysor,* 166 Mich App 93 (1988); *Honor State Bank v. Timber Wolf Constr. Co.,* 151 Mich App 681 (1986). By operation of law, any debt that Mr. Hitsman may have owed on the vehicle was satisfied in full by the money received by Santander for the sale of the vehicle, leaving Mr. Hitsman with an account balance of zero.

79.     Regardless, and apart from Santander's violations of the UCC, any claim that Santander may have had against Mr. Hitsman in connection with the account became time-barred and judicially unenforceable in 2014 by operation of the four-year statute of limitations found in

the Michigan UCC, MCL 440.2725. *See Harden v. Autovest, L.L.C.,* No. 1:15-cv-34, 2015 WL

4583276, *2-5 (W.D. Mich. July 29, 2015).

80.     Mr. Hitsman disputes owing any money to CitiFinancial, Santander, or anyone

else in connection with the account.

81.     Mr. Hitsman expressly refuses to pay any money to CitiFinancial, Santander, or

anyone else in connection with the account.

82.     In or about 2014, Santander offered to sell more than 100,000 delinquent

automobile loan accounts. As part of that process, Santander provided substantial information

regarding the accounts to multiple, prospective purchasers and brokers for evaluation. The

prospective purchasers and brokers signed non-disclosure agreements for all accounts that were

not purchased from Santander.

83.     Between July 25, 2014 and June 9, 2015, Santander sold more than 100,000

delinquent automobile loan accounts to non-party Cascade Capital, LLC ("Cascade"), a

California limited liability company. Mr. Hitsman's account was included in the sale from

Santander to Cascade.

84.     Unbeknownst to Cascade, one or more of the prospective purchasers or brokers

that had received and reviewed account information from Santander, retained and stole the

information for more than 100,000 Santander accounts, including information regarding Mr.

Hitsman's account.

85.     Thereafter, non-party D'Juan Dale Leverette obtained the stolen information for

more than 100,000 Santander accounts, including the stolen information regarding Mr. Hitsman's

account.

86.     In or about May 2017, Mr. Leverette provided Mr. Hitsman's stolen account information to an entity named Riley, Allen & Associate's LLC ("RAA"), located in Charlotte, North Carolina.

87.     In May 2017, an employee and agent of RAA communicated by telephone with Mr. Hitsman and his wife, Debra Hitsman, regarding the account. The RAA employees stated that a company named "Constar" had purchased the account, that Mr. Hitsman owed a balance of $7,232.60, and that RAA had been hired to collect the money from Mr. Hitsman. The RAA employees falsely stated that a civil lawsuit had been filed against Mr. Hitsman, and that if Mr. Hitsman did not immediately make arrangements to pay $2,169.00, Mr. Hitsman was going to be arrested by the sheriff and prosecuted. Hearing that, Mrs. Hitsman made a payment to RAA, which was processed by an entity named Regional Processing Services LLC ("RPS").

88.     In May 2017, Mr. Hitsman's attorney contacted Cascade regarding the account. Cascade claimed that: (a) Cascade was the lawful owner of Mr. Hitsman's account; (b) RAA was not authorized to collect the account; (c) RAA had somehow acquired a large portfolio of stolen CitiFinancial/Santander accounts, including Mr. Hitsman's account; and (d) multiple consumers had contacted Cascade and complained that RAA was falsely threatening the consumers with arrest, prosecution and litigation unless the consumers paid money to RAA based on stolen accounts and stolen consumer information that was purchased by and belonged to Cascade.

89.     On or about June 2, 2017, Mr. Hitsman and Mrs. Hitsman, RAA and RPS, all through counsel, reached a settlement and resolved their dispute.

90.     On August 8, 2017, Cascade Capital, LLC filed a lawsuit against DRS Processing LLC ("DRS"), dba Miller Stark Klein & Associates, in the United States District Court for the

Western District of North Carolina, Charlotte Division, Case No. 3:17-cv-470, alleging that DRS had obtained stolen information for more than 100,000 delinquent automobile loan accounts that had been purchased by Cascade from Santander, and that DRS had unlawfully used the stolen information to contact and threaten consumers with litigation and prosecution unless the consumers paid money to DRS. According to documents filed in the lawsuit by DRS and its owner, Darryl Miller, the stolen information was contained in thirty-one portfolios purchased during the course of 2017 by DRS from D'Juan Dale Leverette. DRS and Mr. Miller paid for the stolen information by wiring more than $200,000.00 to an account owned by Mr. Leverette.

91.     In February 2018, Mr. Hitsman and his family again began to receive threatening telephone calls regarding the Citifinancial/Santander account.

92.     On February 27, 2018, employees and agents of an entity named United Merchant Asset Recovery, LLC ("UMAR") contacted Mr. Hitsman and his wife by telephone and falsely stated that (a) UMAR had been "retained" by Santander to collect money from Mr. Hitsman in connection with his account; (b) Mr. Hitsman owed more than $5,000.00; (c) a "team of attorneys" was "managing the litigation" to collect money from Mr. Hitsman; (d) a lawsuit had already been filed by Santander against Mr. Hitsman to collect the debt; (e) if Mr. Hitsman paid money, documents would be filed that day to stop the lawsuit; (f) Mr. Hitsman was "guilty" of breach of contract and fraud; (g) if Mr. Hitsman did not pay money that day, Mr. Hitsman would have to appear in court and the judge would rule that Mr. Hitsman owed thousands of dollars more in interest, court costs and attorney fees; and (g) a lien was going to be placed on Mr. Hitsman's home and other assets, and his wages were going to be garnished.

93.     On February 4, 2019, Mr. Hitsman and his wife filed a lawsuit against UMAR and

others in the United States District Court for the Western District of Michigan, Case No. 1:19-cv-82, alleging that UMAR had obtained and used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation and prosecution unless Mr. Hitsman paid money to UMAR.

94.     On or about February 27, 2019, Mr. Hitsman and Mrs. Hitsman, and UMAR and the other defendants, resolved their dispute and the lawsuit was dismissed.

95.     According to UMAR and its owners, Mr. Hitsman's stolen account information and stolen personal and financial information was obtained by UMAR in a portfolio of stolen Santander accounts that UMAR purchased in or about January of 2018 from "D'Juan Leverette, 11623 Sweet Rose Court, Charlotte, North Carolina 28269, telephone number 770-906-4652." According to UMAR and its owners, at the request of Mr. Leverette, UMAR paid defendants for the portfolio of stolen Santander accounts by wiring funds (Wire Transfer No. 121000248) to a Wells Fargo, N.A. business account (No. 114827xxxx), maintained for the benefit of all defendants, in the name of "Precious Stephens, Precious Health and Wellness Spa, LLC, 1015 Oakenshaw Street, Fort Mill, South Carolina 29715."

96.     In February 2020, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers.

97.     On April 13, 2020, Mr. Hitsman filed a lawsuit in the United States District Court for the Western District of Michigan, Case No. 1:20-cv-319, *Jack Hitsman v. Fairview Mediation Group Inc, et al.*, Case No. 1:20-cv-319, alleging that the callers had obtained and

used Mr. Hitsman's stolen Santander account and stolen personal and financial information, to contact and falsely threaten Mr. Hitsman with litigation, prosecution and other adverse consequences, unless Mr. Hitsman paid money to the defendants.

98.     On or about May 26, 2020, Mr. Hitsman and the defendants in Case No. 1:20-cv-319 resolved their dispute and the lawsuit was dismissed.

99.     In July 2020, Mr. Hitsman and his family again received calls from debt collectors and credit identity thieves regarding the Citifinancial/Santander account, again threatening Mr. Hitsman with prosecution, litigation and other adverse consequences, unless Mr. Hitsman paid money to the callers, as described below.

100.    On July 20, 2020, defendants used an autodialer to place a call from telephone number 888-718-0318 to Mr. Hitsman's cellular telephone and left the following pre-recorded and computer-generated message on voice mail: "Hello, my name is Jonathan Black, and this important message is intended for Jack Hitsman, 8563123. I have a back-ordered delivery scheduled for Jack Hitsman. We've made several attempts to reach you. We will make one final attempt at your place of employment and/or residence regarding proper delivery of your documents. To make alternate location, or provide a verbal statement, press -1- now or call 888-718-0321. Again, 888-718-0321, regarding this matter."

101.    On July 20, 2020, defendants used an autodialer to place multiple calls from telephone number 937-995-1054 and others to the cellular telephones belonging to Mr. Hitsman's relatives and other third parties, including Mr. Hitsman's adult daughter residing in Ohio, and left on voice mail, pre-recorded and computer-generated messages, virtually identical to the message described in the immediately preceding paragraph of this complaint.

102.    Telephone calls placed to telephone number 937-995-1054 are answered as "PNR Legal Services" or "P&R Legal Services."

103.    On July 20, 2020, Mr. Hitsman's wife, Debra Hitsman, placed a return call to defendants at telephone number 888-718-0321 and spoke with defendants' employee and agent who identified herself as "Susan Green" at "PNR Mediations." In the ensuing conversation, defendants' employee and agent made the following representations to Mrs. Hitsman:

a)    Mr. Hitsman owed a deficiency balance of $7,232.60 in connection with a delinquent Santander account related to the purchase, repossession and sale of a 2002 Ford Econoline motor vehicle.

b)    Santander sold the vehicle at auction in 2011.

c)    The sale of the vehicle at auction reduced the amount of the debt owed by Mr. Hitsman to $3,025.00.

d)    Santander had retained defendants to collect the debt from Mr. Hitsman.

e)    Santander was defendants' "client."

f)    Defendants were collecting the debt for Santander.

g)    A lawsuit and a formal complaint were being filed against Mr. Hitsman, with charges, for (1) breach of contract, (2) misappropriation of services and/or funds, and (3) attempt to defraud.

h)    Because a civil suit was being filed against Mr. Hitsman, there is no statute of limitations regarding the dispute.

i)    Defendants were willing to settle the account and related debt for $2,500.00.

        j)      The parent company of PNR Mediations is "LSA."

104.    On July 20, 2020, for the sole purpose of identifying and pursuing the entities who had obtained Mr. Hitsman's stolen personal and financial information and used that information to contact Mr. Hitsman and Mr. Hitsman's relatives and falsely threaten Mr. Hitsman with prosecution, litigation and other adverse consequences, in efforts to extort the payment of money from Mr. Hitsman to supposedly satisfy a debt that Mr. Hitsman does not owe and the defendants have no right to collect, Mr. Hitsman authorized a payment to defendants via debit card in the amount of $75.00.

105.    According to the issuing bank for the debit card used to make the payment of $75.00 to defendants, the funds were deposited into a merchant account established in the name of "LSA" in South Carolina, telephone number 866-285-1488.

106.    Defendants violated the terms of their agreement with Visa as well as with the acquiring bank that provides the merchant account, by using the merchant account to receive debit card and credit card payments from consumers throughout the United States who have been victims of defendants credit identity theft and debt collection scheme and coerced to pay money to defendants under false threats of litigation, prosecution and other adverse consequences to supposedly satisfy fake debts and accounts that defendants know are counterfeit.

107.    Defendants also violated the terms of their agreement with Visa as well as with the acquiring bank that provides the merchant account, that prohibits defendants from using the merchant account to receive debit card and credit card payments to supposedly satisfy charged-off debt.

108.    The identity of defendants' acquiring bank and payment processor or ISO will need to be obtained in discovery from Visa, so that plaintiff can obtain by subpoena from the

acquiring bank and payment processor or ISO, the records related to defendants' merchant

account, to identify and name as additional defendants in this lawsuit, the other participants in

defendants' fraudulent scheme.

109.    On July 21, 2020, defendants sent an email from

customerservice@paymentgroup.net to Mr. Hitsman. Attached to the email was a letter on the

letterhead of "LSA," telephone numbers 855-209-3887 and 888-640-1843 (fax), captioned

"Payment Authorization Form." The letter referenced "Case Number: WT943025," "Account

Number: 30000126154111000" and "Creditor: SANTANDER." The letter did not provide any

business address for LSA. The letter did not state the name of the supposed current creditor for

the account. Mr. Hitsman refused to sign the document. The email also linked to a DocuSign

document captioned "Certificate Of Completion" that stated the "Originator" of the document

was "Customer Services, 1 CS, 1 CS, Fort Mill, SC 29715." The email also linked to a DocuSign

document captioned "Consumer Disclosure," that identified "Payment Group,

customerservice@paymentgroup.net," as the sender of the email. Additional information

regarding the DocuSign account will need to be obtained from DocuSign via subpoena in

discovery. A copy of the email and documents are attached to this complaint as Exhibit A.

110.    On July 21, 2020 at approximately 5:30 p.m., Mr. Hitsman's attorney sent an

email to defendants multiple email addresses and faxed a copy of the email to defendants' fax

number, stating that Mr. Hitsman's attorney represented Mr. Hitsman and demanding that

defendants immediately cease all direct communications with Mr. Hitsman and his family,

relatives and any other third parties regarding the alleged debt. The email contained Mr.

Hitsman's attorney's name, business address, telephone number, fax number, and email address.

111.    On July 22, 2020 at approximately 12:12 p.m., defendants, undeterred, used an

automated dialing system to place yet another call to Mr. Hitsman's cellular telephone, from telephone number 888-718-0329, and left the following pre-recorded and computer-generated message on voice mail: "8563123. I have a back-ordered scheduled delivery for Jack Hitsman. We've made several attempts to reach you. We will make one final attempt at your place of employment and or residence regarding proper delivery of your documents. [Unintelligible] alternate location, press one now or call 888-718-0329. Again 888-718-0329 regarding this matter."

112.    The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

113.    Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

114.    Defendants and their employees and agents falsely represented that Mr. Hitsman owed money in connection with a counterfeit account.

115.    Defendants and their employees and agents falsely represented and inflated the amount of Mr. Hitsman's alleged debt.

116.    Defendants and their employees and agents falsely represented that Mr. Hitsman owed a debt that is not owed.

117.    Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

34

118.     Defendants and their employees and agents failed to provide the identity of the entity to whom the alleged debt is owed.

119.     Defendants and their employees and agents falsely represented and falsely implied that defendants are mediators.

120.     Defendants and their employees and agents falsely represented and falsely implied that Santander was defendants' client.

121.     Defendants and their employees and agents falsely represented and falsely implied that Santander had retained defendants to collect the alleged debt from Mr. Hitsman.

122.     Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

123.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Hitsman's personal and financial information, in an effort to coerce the payment of money from Mr. Hitsman.

124.     Defendants and their employees and agents wrongfully obtained and wrongfully used information regarding Mr. Hitsman's relatives, in an effort to coerce the payment of money from Mr. Hitsman.

125.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

126.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

127.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Hitsman to collect the alleged debt.

128.     Defendants and their employees and agents falsely represented and falsely implied

that a lawsuit already had been filed against Mr. Hitsman to collect the alleged debt.

129.     Defendants and their employees and agents falsely represented that a process server was being dispatched to serve Mr. Hitsman with a summons and complaint that had been filed against Mr. Hitsman in efforts to collect the alleged debt.

130.     Defendants and their employees and agents falsely represented that Mr. Hitsman had committed fraud.

131.     Defendants and their employees and agents falsely represented that Mr. Hitsman had misappropriated money and services.

132.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman had committed a crime.

133.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Hitsman was going to be arrested and prosecuted unless Mr. Hitsman paid money to defendants.

134.     Defendants and their employees and agents falsely represented and falsely implied that there was no statute of limitations to bar filing a lawsuit against Mr. Hitsman to collect the alleged debt.

135.     Defendants and their employees and agents wrongfully threatened to file a lawsuit against Mr. Hitsman to collect a time-barred debt.

136.     Defendants did not intend to file a lawsuit against Mr. Hitsman in any court in efforts to collect the alleged debt.

137.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

138.     The FDCPA states that it is unlawful for a debt collector may not engage in any

36

conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

139.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

140.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

141.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

142.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

143.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

144.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

145.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

146.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

147.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

148.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

149.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

150.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

151.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

152.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

153.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

154.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by

law.  15 U.S.C. § 1692f(1).

155.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

156.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

157.    Defendants and their employees and agents failed to timely send to Mr. Hitsman a notice containing the information required by 15 U.S.C. § 1692g(a).

158.    The FDCPA states that a debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

159.    The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

160.    A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt.  15 U.S.C. § 1692b(2).

161.    Defendants violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b), by placing the above-described calls to Mr. Hitsman's relatives, including Mr. Hitsman's daughter, and other third parties, and leaving the above-quoted message on voice mail.

162.    The FDCPA states that if a debt collector knows the consumer is represented by an attorney with respect to a debt and has knowledge of, or can readily ascertain, the attorney's

name and address, the debt collector may not communicate directly with the consumer in connection with the collection of the debt.  15 U.S.C. § 1692c(a)(2).

163.    Defendants violated the FDCPA, by continuing to communicate directly with Mr. Hitsman after receiving emails and a fax transmission from Mr. Hitsman's attorney, demanding that defendants cease all direct communications with Mr. Hitsman.

164.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

165.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA.

166.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

167.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

168.    In connection with efforts to collect an alleged debt from Mr. Hitsman, defendants obtained and used personal information regarding Mr. Hitsman and his relatives from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe),

or Interactive Data, LLC.

169.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

170.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

171.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

172.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

173.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a

motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

174.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

175.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Hitsman and his relatives.

176.    Defendants used the database to obtain, disclose and use personal information regarding Mr. Hitsman and his relatives.

177.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Hitsman and his relatives that was derived from motor vehicle records.

178.    Alternatively, the entity that obtained Mr. Hitsman's and his relatives' personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Hitsman and his relatives that was derived from motor vehicle records.

179.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

180.    Defendants knowingly obtained, disclosed and used Mr. Hitsman's and his relatives' personal information, obtained from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

181.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Hitsman's or his relatives' personal information obtained from the database.

42

182.     No defendant had Mr. Hitsman's or his relatives' consent, permission, authorization or waiver to obtain Mr. Hitsman's or his relatives' personal information from the database.

183.     A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

184.     The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

185.     Defendants intentionally and wilfully violated the DPPA.

186.     Each defendant was aware, or should have been aware, of the unlawful debt collection practices being used by the other defendants to collect alleged debts.

187.     As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.     Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

188.     Plaintiff incorporates the foregoing paragraphs by reference.

189.     Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)       Defendants violated 15 U.S.C. § 1692b;

43

b)      Defendants violated 15 U.S.C. § 1692c;

c)      Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with

the collection of a debt;

d)      Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading

representations and means in connection with the collection or attempted

collection of a debt;

e)      Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means

to collect or attempt to collect a debt from plaintiff; and

f)      Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

190.    Plaintiff incorporates the foregoing paragraphs by reference.

191.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00,

pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d) An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e) An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f) An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

### Count 3 – Michigan Regulation of Collection Practices Act

192. Plaintiff incorporates the foregoing paragraphs by reference.

193. Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b) Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or

abusive method to collect a debt;

f)    Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

g)    Defendants violated M.C.L. § 445.258 by communicating with plaintiff's

daughter.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 445.257(2);

b)    Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)    Statutory damages pursuant to M.C.L. § 445.257(2);

d)    Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)    Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

194.   Plaintiff incorporates the foregoing paragraphs by reference.

195.   Each defendant has violated the MOC.  Each defendant's violations of the MOC

include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a

misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the

purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication

with a debtor the following: (i) the legal status of a legal action being taken or

threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the

nonpayment of a debt will result in the debtor's arrest or imprisonment, or the

seizure, garnishment, attachment or sale of the debtor's property;

e)       Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

abusive method to collect a debt;

f)       Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

h)       Defendants violated M.C.L. § 339.919 by communicating with plaintiff's brother.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)       Actual damages pursuant to M.C.L. § 339.916;

b)       Treble the actual damages pursuant to M.C.L. § 339.916;

c)       Statutory damages pursuant to M.C.L. § 339.916;

d)       Equitable relief pursuant to M.C.L. § 339.916; and

e)       Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

Dated: July 22, 2020

                               /s/ Phillip C. Rogers
                               Phillip C. Rogers (P34356)
                               Attorney for Plaintiff
                               6140 28th Street SE, Suite 115
                               Grand Rapids, Michigan 49546-6938
                               (616) 776-1176
                               ConsumerLawyer@aol.com